IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KEITH COOPER,

          Plaintiff,

v.

AIRBUS AMERICAS, INC.,

          Defendant.

Case No. 1:23-CV-00309-MU

**TRIAL BY JURY REQUESTED**

## AMENDED COMPLAINT

### I.
### INTRODUCTORY AND JURISDICTIONAL STATEMENT

The plaintiff, Keith Cooper, has filed a complaint seeking primarily declaratory and injunctive relief, as well as back pay, compensatory damages, and other remedies to address wrongful termination resulting from retaliation and unlawful discrimination.

This legal action is initiated under 42 U.S.C. § 1981a, as amended, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.), which protect employees from retaliatory measures. Jurisdiction for this case is invoked under 28 U.S.C. § 1331 and 1343, 42 U.S.C. § 2000e, 5 U.S.C. § 2301-2305, and 29 U.S.C. § 2601 et seq.

### II.
### EXHAUSTION OF ADMINISTRATIVE REMEDIES

The plaintiff submitted a Charge of Discrimination and Retaliation against the defendant to the Equal Employment Opportunity Commission within the required timeframe. Additionally, the plaintiff lodged this Complaint within ninety (90) days of receiving their Notice of Rights. Consequently, the plaintiff has fulfilled all administrative procedures.

1

## III.

## PARTIES

1. Plaintiff, Keith Cooper, is an African American male residing in Mobile County, Alabama. Mr. Cooper was the only black Manufacturing Engineer employed at the Flightline at Airbus Americas Inc. in Mobile, AL. Mr. Cooper was hired as a Manufacturing Engineer in February 2021.

2. The Defendant, Airbus Americas Inc., a branch of the global aerospace corporation Airbus, engages in commercial aircraft manufacturing and overseas operations at the Airbus U.S. Manufacturing Facility situated in Mobile, AL. This facility, referred to as the Mobile Manufacturing Site ("MMS"), is responsible for the production of commercial aircraft. It was also the place of employment for the Plaintiff until his wrongful termination.

## IV.

## FACTUAL ALLEGATIONS

3. Plaintiff was initially hired to work on the A220 Aircraft as a Corrosion Specialist on May 1st, 2019, at the MMS and worked in that role from 2019 to 2021.

4. On July 1st, 2020, Plaintiff received correspondence from Dominick Guire, Senior Director of Human Resources indicating that he was going to connect plaintiff with Frederic Weigert and other engineering senior leaders to inquire about becoming a part of the mentorship program as a mentee.

5. On February 15, 2021, Plaintiff was hired to work on the A320 Aircraft as a Manufacturing Engineer on the flightline of the MMS. This position requires at least 18 months of training that consists of a training assignment located in Germany.

6. On February 15, 2021, and thereafter, Plaintiff was the only black manufacturing engineer working in his office area located within the flightline of the MMS.

7. The flightline team Plaintiff joined was comprised of mostly white employees. The team included: Flightline Manager Bruno Fiton, fellow Manufacturing Engineers Bernard Bousquet, Reid Stewart, and Alexandro Tijerina, an Aircraft Manager, Jessica Davis, and a Logistics Manager Tamara Tims.

8. Instead of being assigned abroad for the 18 months of training, Reid Stewart (Manufacturing

2

Engineer 1) was assigned to assist Plaintiff in his transition onto the flightline team at the MMS.

9. Reid Stewart at the start of training was aggressive and hostile towards Plaintiff throughout their training period together. Stewart was impatient with Plaintiff's questions and provided truncated explanations to Plaintiff's queries on a daily basis.

10. On May 25, 2021, Plaintiff sent an email to Ethan Mattocks, the Defendant's Human Resource officer complaining of racial discrimination, being shot at with assault style nerf gun bullets during training, racially abusive treatment from his colleagues, and the sub-standard training he was receiving as a result.

11. On May 26th, 2021 plaintiff met with Ethan Mattocks (HR) and Stephanie Burt (Ethan Mattocks' HR manager) to discuss the issues identified by plaintiff in the email. During that meeting the plaintiff raised concerns about the hostile working environment and the derogatory statements.

12. On May 27th, 2021, at 7:06 AM, while working on the flightline, Stewart in tandem with flightline member Alexandro Tijerina, endeavored to deploy the term "boy" in facetious conversations amongst themselves (while using exaggerated Southern drawls) to mock Plaintiff's manner of speaking whenever he was within earshot. Logistics manager Tamara Tims joined in her colleague's racial hostility towards Plaintiff with mocking impersonations of black preachers.

13. On or about May 27, 2021, an investigation was conducted, and it was determined that the plaintiff was singled out and treated disparately.

14. Reid Stewart stated he would no longer train plaintiff due to the complaint made to HR on May 25, 2021. Such refusal led to not getting the proper training and caused major interruptions in Plaintiff's training progress.

15. Plaintiff avers that his status as the only black Manufacturing Engineer on the flightline engendered a hostile response from his white colleagues that culminated in his unlawful termination.

16. On May 28th, 2021, at 08:03 AM while working on the flightline, Alexandro Tijerina and Bernard Bousquet told Plaintiff that he was "not educated" and that he "did not deserve to be" at Airbus and routinely demeaned Plaintiff's intelligence. This continued to occur on various occasions.

17. Tijerina additionally alleged that the Plaintiff had secured the Manufacturing Engineer position at the expense of a white acquaintance of Tijerina's, whom Tijerina believed and stated to be

3

more qualified than the Plaintiff.

18. On or about May 28, 2021, Bruno Fiton escorted plaintiff to the Airbus Nurse's station for evaluation due to obvious signs of stress. Following his visit to the nurse's station, Plaintiff left work early to seek medical attention from his primary doctor, as recommended by the Airbus nurse.

19. On May 28, 2021, after Plaintiff left work early, a Be On the Look Out (BOLO) notice was posted on the wall at Airbus' Guard Shack, displaying Plaintiff's picture in plain sight. This action portrayed Plaintiff as a danger or threat, intensifying the humiliation and contributing to the hostile work environment.

20. On May 31, 2021, while out on leave Plaintiff sent another email to inform HR that the harassment and hostile work environment continued.

21. Plaintiff later went to his primary care physician where he was put on FMLA from June 3, 2021 to June 21, 2021 due to stress from the tension that Alex Tijerina created in the office.

22. The Plaintiff expressed concern over the lack of formalized training provided by a professional instructor at the Airbus training facility in Germany, which had been made available to their white colleagues.

23. On the other hand, Plaintiff's trainer, Reid Stewart, lacked formal training as an instructor and did not have a structured training program in place to assist Plaintiff in transitioning to their role on the Flightline.

24. The Defendant became aware of the inadequate training provided to the Plaintiff when it came to light during Plaintiff's initial 90 day on job training assessment that he had not been trained on "concessions," which is a crucial aspect of a Flightline Engineer's responsibilities.

25. On June 21, 2021, Bernard Bousquet was assigned to continue training Plaintiff. Bousquet, who had previously questioned Plaintiff's intelligence, presented Plaintiff with ad hoc test/ training assessments containing obvious errors and inaccuracies in hopes of proving the Flightline team's thesis that Plaintiff was unqualified to be a part of their team.

26. On or around July 7, 2021, Plaintiff saw Ethan Mattocks while walking upstairs and had a conversation concerning his current trainer. Plaintiff explained to Ethan Mattocks that Bernard Bousquet was very hostile and cursing at him while in training. Ethan Mattocks stated he had known Bernard Bousquet for 5 or more years and could not imagine Bernard Bousquet cursing

4

at him.

27. Plaintiff emailed Stephanie Burts and Ethan Mattocks to request a new HR rep because Ethan Mattocks was biased and not taking the complaints seriously.

28. July 9, 2021, Bernard Bousquet became very hostile and cursed out plaintiff in front of Ethan Mattocks (HR representative). Plaintiff left early that day due to the stressful situation that occurred during that meeting. Upon leaving early Plaintiff went to his primary care physician.

29. On July 9, 2021, Plaintiff's primary care physician placed him on medical leave from July 12, 2021 – July 27, 2021. Plaintiff was approved by Airbus for FMLA.

30. On July 11, 2021, Plaintiff filed a charge with Equal Employment Opportunity Commission (EEOC).

31. On July 13th 2021, while Plaintiff was out on FMLA (a protected action), a meeting was held between Bruno Fiton, Bernard Bousquet, and Ethan Mattocks where they discussed retaliatory plans to put Plaintiff on a Performance Improvement Plan (PIP), move to a less desirable position, and to terminate. This action emphasizes that Airbus acted with knowledge and reckless disregard for Plaintiffs FMLA status, demonstrating a willful violation.

32. On August 2, 2021, Plaintiff returned from FMLA leave. Rather than make efforts to stop the racial discrimination and harassment on the flightline, the defendant moved Plaintiff to the Flowline area (where planes are assembled) which is a less desirable position. Thus, enacting their plans for retaliatory actions they discussed while Plaintiff was on leave.

33. In this position his hours, duties, and responsibilities changed. Plaintiff was also placed on a Performance Improvement Plan (PIP) and Manufacturing Engineer Eric Crosby was assigned as his trainer.

34. August 5, 2021, at 10:57 AM, Eric Crosby stated that the Manufacturing Engineer training requires at least 18 months of training.

35. Unlike the training provided by his Flowline colleagues, Plaintiff thrived under the guidance of Crosby and received positive feedback for his performance while operating within the parameters of the Performance Improvement Plan.

36. On September 7, 2021, Plaintiff reached out to Randolph Miller (Flowline Manager) and asked for more time to release work orders. Plaintiff understood that the PIP allowed extra time or flexibility as it was stated within the guidelines.

37. Despite making it clear that the PIP was not a means of punishment but support his success as a Manufacturing Engineer, Randolph Miller replied, "Hey Keith, I think we will proceed with our meeting tomorrow as planned but we can discuss any concerns you have there. Keep up the good work!"

38. On September 8, 2021, a meeting was held to review the Performance Improvement Plan (PIP). Although the PIP policy specifies that only the employee and their manager should be present for the review, Randolph Miller and Ethan Mattocks also attended, which added to the plaintiff's stress as he felt overwhelmed and targeted. Flightline Manager Bruno Fiton administered Plaintiff's final performance assessment and ensured that Plaintiff would not achieve a passing result by intentionally questioning Plaintiff on a topic for which he had not been trained. Randolph Miller intervened and told Bruno Fiton that what he (Bruno Fiton) was asking Keith comes with experience. Mr. Fiton became agitated and stated, "We will reschedule this meeting for next week."

39. On September 8, 2021, a couple hours after the meeting with Bruno Fiton, Randolph Miller, and Ethan Mattocks, Plaintiff went to talk to Daryl Taylor (General Manager) and was told by his assistant Macie Myrick that Daryl Taylor would set up a day and time to discuss the issues Plaintiff was having.

40. On September 8, 2021, at 7:02 PM, Plaintiff received a text message from Macie Myrick that stated, "Hey I worked late today and just got back to the house. I spoke with Daryl and Jennifer…is going to email you to set up a time to speak with him on your topic. I'm not really allowed to get into details on personal/work related stuff. It would be best if I don't assert myself, hope you understand. Daryl will be able to discuss it though so hopefully that clears up anything."

41. Defendant terminated Plaintiff's employment on September 10, 2021, approximately 7 months after being employed as a Manufacturing Engineer. The learning curve for Manufacturing Engineers at MMS is at least 18 months.

42. Defendant, after Plaintiff was terminated, changed the wording on the PIP paperwork rendering an unsatisfactory result to justify termination. Plaintiff maintains he passed all assessments taken while on the PIP and has original paperwork showing original wording satisfying the PIP requirements.

43. On October 13, 2021, Plaintiff was told by Pat, one of the security guards at Airbus' Guard

6

Shack that a Be On the Look Out (BOLO) was placed on the wall with Plaintiffs picture displayed for all to see for the second time. Once while Plaintiff was on FMLA leave and after the Plaintiff was terminated.

## V.

## CAUSES OF ACTION

### Count I
### Race Discrimination and Retaliation in Violation of Title VII

44. Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

45. By the acts and practices described above, Defendant has discriminated and retaliated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of Title VII.

46. Defendant knew that its actions constituted unlawful discrimination and retaliation under Title VII and/or acted with malice or reckless indifference to Plaintiff's statutorily protected rights.

47. The plaintiff is presently enduring and will continue to endure irreparable suffering and harm as a result of the defendant's unlawful conduct outlined herein, unless this Court grants an injunction.

### Count II
### Race Discrimination and Retaliation in Violation of 42 U.S.C. § 1981

48. Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

49. Due to the aforementioned actions, Defendant has engaged in unlawful discrimination and retaliation against Plaintiff on the basis of race in violation of 42 U.S.C. § 1981.

50. The plaintiff is presently enduring and will continue to endure irreparable suffering and harm as a result of the defendant's unlawful conduct outlined herein, unless this Court grants an injunction.

### Count III
### Retaliation in Violation of 42 U.S.C. § 1981 and Family and Medical Leave Act FMLA)

51. Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the

7

preceding paragraphs, as if fully set forth herein.

52. Defendant retaliated against Plaintiff for exercising his rights under the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.) and for opposing discriminatory practices, in violation of 42 U.S.C. Section 1981.

53. Defendant's retaliatory actions were undertaken knowingly and willfully and showed reckless disregard for whether such conduct was prohibited by the Family and Medical Leave Act. Defendant Airbus was aware of Plaintiff's protected FMLA status and engaged in retaliatory actions, including but not limited to terminating his employment, to deter him from exercising his rights under the FMLA.

54. Defendant's actions, taken in willful violation of Plaintiff's rights under the Family and Medical Leave Act 29 U.S.C § 2617(c)(2) and Equal Rights Under the Law 42 U.S.C. § 1981, demonstrate a conscious disregard for the protections afforded by these statutes, thereby meeting the threshold for willful misconduct and the three year statute of limitations.

55. As a result of Defendant's knowing and reckless conduct, the plaintiff has suffered, is presently enduring and continues to endure irreparable suffering and harm as a result of the defendant's unlawful conduct outlined herein, unless this Court grants an injunction to prevent further damages by the unlawful actions of the Defendant.

## IV.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this court assumes jurisdiction and renders judgment for the plaintiff and against the Defendant as follows:

(a) A declaratory judgment that the Defendant has discriminated and retaliated against Plaintiff on the basis of his race in violation of Title VII;

(b) A declaratory judgment that the Defendant has violated the anti-discrimination provisions of 42 U.S.C. Section 1981;

(c) A declaratory judgment that the Defendant has violated the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.).

(d) Grant the Plaintiff an order requiring the Defendant to make him whole by

awarding Plaintiff the sum of $300,000.00 as compensatory damages;

(e)    Grant the Plaintiff an order requiring the Defendant to make him whole by awarding Plaintiff his costs and expenses incurred in bringing this action, including reasonable attorney's fees, front pay, backpay (plus interest), compensatory, punitive, and/or nominal damages.

(f)    and such other relief as the court may deem just and proper.

*Keith Cooper*

Mr. Keith Cooper
Pro Se
KeithCooper36610@gmail.com

9

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document on the following by mail on this 9th day of October 2024 to:

Kathryn Willis
Burr & Foreman LLP
11 North Water Street Suite 2220
Mobile, Alabama 36602

Mr. Keith Cooper
Pro Se
Keithcooper36610@gmail.com